UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant and Cross-Appellee,

v.

NAPIER ELECTRIC & CONSTRUCTION COMPANY, INC., Hadward Napier and Frances Napier, Appellees and Cross-Appellants.

Nos. 76–316, 76–348.

Court of Appeals of Kentucky.

July 7, 1978.

C. Dant Kearns, John W. Potter, Stites, McElwain & Fowler, Louisville, Richard D. Cooper, Cooper, Gullet, Combs & Engle, Hazard, for appellant.

Lohren F. Martin, Jr., Rose, Martin & Scalf, Williamsburg, for appellees.

Before GANT, HOWARD and HOWERTON, JJ.

GANT, Judge.

The corporate appellee contracted to construct the sewer lines, water lines and a sewage treatment facility for Woodson Bend, Inc., near Somerset, Kentucky. Appellant, United States Fidelity & Guaranty Company, was surety on two bonds for the corporate appellee, one being a Labor and Material Payment Bond in the face amount of $778,000, obligating the appellant to pay all materialmen and suppliers should the appellee default; the other being a Performance Bond, binding the appellee to complete the project in the event of default. As a part of the consideration for writing this and other bonds for the corporate appellee, the latter, together with the individual appellees, owners of the corporation, executed an Indemnity Agreement to the appellant, which bound the appellees to indemnify the appellant for all "liabilities, losses and expenses" incurred by the appellant, including all amounts paid by appellant "in good faith under the belief that: (1) Surety was or might be liable therefor; (2) Such payments were necessary or advisable to protect any of Surety's right or to avoid or lessen Surety's liability or alleged liability.

Appellee defaulted on his contract, causing the appellant to pay out $145,956.98 as surety on the Labor and Material Payment Bond to materialmen and suppliers who had not been paid by the appellee company, even though draws had been paid by the owner to that company pursuant to progress reports. In order to complete the project, under the terms and conditions of the Performance Bond, another contractor was hired for the sum of $257,000, the owner applying the unpaid sums remaining on the contract and the appellant paying the balance of $124,163.36. Thereafter, appellant instituted this suit asking the sum of $270,120.34, basing the action on the written Indemnity Agreement signed by the appellee and not on the surety relationship.

The lower court held as a matter of law that all sums paid by the appellant under

the Performance Bond were paid in good faith—indeed there was no evidence to the contrary. The evidence further disclosed that the appellant had, in fact, paid the sum of $124,163.36 for completion of the project. The parties stipulated that the Indemnity Agreement was valid and binding. This case was submitted to the jury under instructions objected to by both appellant and appellees, which jury returned a verdict in favor of the appellant for $40,877.98.

Appellant directs its argument primarily toward its contention that, under the circumstances of this case, appellant was entitled to a directed verdict in the amount of $270,120.34. As hereinabove pointed out, this was an action based upon the Indemnity Agreement, not an action based upon the surety contract or quantum merit. The instructions to the jury, herein, permitted the jury to find such things as the "fair market value of all materials," the "fair standard cost of labor and services," the "amount necessary to complete the performance of the contract," and other extraneous matters. We feel that the law is well settled in Kentucky as set out in the case of *National Surety Corp. v. Peoples Milling Co.*, 57 F.Supp. 281 (W.D.Ky.1944), in which the court states:

> The right of an indemnitee to recover of the indemnitor under a contract of indemnity according to the terms of such a contract is well recognized. Such a contract is not against public policy and will be enforced if the indemnitee has suffered loss thereunder and has complied with its terms. *Id.* at 282.

In a case in which the Indemnity Agreement was virtually identical with the one in the instant case, originating in Texas and under the law of that state which we conceive to be the same as that of Kentucky, the guidelines for indemnity are clearly set out. This case is the case of *Engbrock v. Federal Insurance Co.*, 370 F.2d 784 (5th Cir. 1967).

It is our opinion that the following law applies to the case before us:

■ 1. The nature of an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself.

■ 2. The provisions of an indemnity agreement that vouchers or other evidence of payments or an itemized statement of payments sworn to by an officer of the surety shall be prima facie evidence of the fact and extent of the liability of the indemnitor to the surety, and provisions that the indemnitor shall be liable for all liabilities, losses and expenses incurred by the surety and all sums paid by the surety in good faith under the belief that surety was or might be liable for said payments or that said payments are necessary and advisable to protect the surety's right or to avoid and lessen the surety's liability were not against public policy.

■ 3. Under an indemnity agreement containing the provisions hereinabove set out in Paragraph 2, the indemnitor may successfully attack payments made by the surety only by pleading and proving fraud or lack of good faith by the surety.

■ Applying the above standards to the case at bar, the Indemnity Agreement, which was stipulated to be valid and binding, called for the indemnitor to pay the surety for all liabilities, losses and expenses and for all sums paid by the surety in good faith. There was no proof of bad faith or fraud on behalf of the surety and the lower court found on sufficient evidence that all payments were made in good faith. The surety provided proper evidence pursuant to the agreement of all payments made under both the Labor and Material Payment Bond and the Performance Bond. There was no issue to submit to the jury, and the instructions under these facts were clearly erroneous.

For the reasons above stated, this case is reversed and remanded to the lower court with directions to enter judgment therein for the appellant against the appellees in the amount of $270,120.34.

All concur.