SENTRY INSURANCE COMPANY, APPELLANT, *v.*
DAVISON FUEL & DOCK COMPANY, APPELLEE.

[Cite as Sentry Ins. Co. v. Davison Fuel & Dock Co. (1978),
60 Ohio App. 2d 248.]

(No. C-77587—Decided December 13, 1978.)

*Mr. James G. Headley,* and *Mr. William J. Fisher,* for
appellant.

*Mr. Jacob K. Stein,* for appellee.

BLACK, J. The question presented by this case concerns
the limitations, if any, on the recovery by a surety against its
principal for attorney fees and expenses by the surety's re-
tained counsel in connection with a claim asserted by the
obligor on the bond against both surety and principal, when
the agreement between the surety and principal contains the
following indemnification agreement:

"[The principal agrees] to indemnify and keep indem-
nified the [surety] from and against any liability, and all loss,
costs, charges, suits, damages, counsel fees and expenses of
whatever kind or nature which [the surety] shall at any time
sustain or incur, for or by reason, or in consequence of [the
surety] having become surety or entering into such bond or
bonds undertaking or undertakings."

The surety (appellant Sentry Insurance) claims that it is
entitled to recover all fees and expenses incurred by it in its
sole discretion for services performed by its retained counsel
in connection with the bond, from the first moment a claim

for default was asserted until the surety was fully reimbursed, provided only that the surety acted in good faith.

The principal and obligor on the bond (appellee Davison Fuel & Dock Company) claims that the surety's recovery must be limited to such expenses as are reasonably related to the surety's liabilities arising directly from the bonded transaction. The trial court agreed with the principal, and awarded judgment in favor of the surety for fees and expenses in the amount of $2,685.58. We agree with the principle of law adopted by the trial court but modify its judgment by adding an amount apparently overlooked.

All material and relevant facts were stipulated by the parties, who filed cross-motions from summary judgment.

The principal was required to furnish a "supply contract bond" to the University of Cincinnati in order to obtain a one-year contract whereby the principal would furnish 50,000 tons of coal to the University for its campus and for its hospital complex. The principal made written application to the surety for such a bond, and the form contained the language for indemnification quoted above. We note that the surety's claim for attorney's fees and expenses is based on that indemnification agreement between the parties, and not on principles of suretyship law entitling a surety to reimbursement from his principal in case of loss.

The principal was a coal broker, not a producer, and had to contract with a coal supplier, Pickands Mather & Co., for delivery of coal as required by the underlying contract with the university. For reasons not pertinent to the issues in this case, Pickands Mather defaulted on its supply contract, forcing the principal to break the underlying contract, and the university was compelled to buy coal on the spot (open) market.

All resulting claims were litigated in one lawsuit, wherein the university sought compensatory and punitive damages against the principal, the surety and the supplier, and the principal sought compensatory and punitive damages against the supplier. Additionally, the surety sued the principal for reimbursement. Both the principal and the surety retained their own counsel, respectively, and counsel began preparation for trial.

The surety agrees that the principal's counsel were com-

petent to represent the principal in all phases of the litigation, specifically including the claim which the surety had bonded.

Initially, the surety set up three defenses separate and apart from the principal's defenses on the breach of the underlying contract, [1] and moved for a separate trial.

Before trial commenced, the university withdrew its claim for punitive damages against the surety in exchange for the surety's withdrawal of its motion for a separate trial. Further, the surety abandoned its separate defenses, and from that point forward there was no difference between the trial positions asserted by the principal and the surety. However, the surety's counsel were present throughout the trial in addition to the principal's counsel, who carried the burden of defending against the university's claims. The surety's counsel did not examine or cross-examine witnesses. On the fourth day of the trial, the principal and the surety settled with the university for certain compensatory damages under the bond. The trial ended on the sixth day with the jury verdicts against the coal supplier (Pickands Mather) in favor of both the principal and the university.

The surety paid the university the amount agreed to in the settlement of compensatory damages; the principal later reimbursed it for that amount and now agrees that it owes the surety the interest for the period until reimbursement was received by the surety. However, these two parties could not agree on the counsel fees and expenses to which the surety is entitled under their indemnification agreement. The surety brought the instant lawsuit against the principal claiming an aggregate sum of $20,381.94 for its counsel's services and while the principal does not dispute the reasonableness of the amounts or the good faith of the surety, it resists liability for any greater portion of the aggregate sum than was awarded by the trial court.

---

[1] These three defenses were (1) that despite the fact the underlying contract required the delivery of 50,000 tons of coal, the only bond executed by the surety covered a contract for only 28,000 tons, (2) that the surety could not be liable for punitive damages for failure to perform the underlying contract because legally it had the option to perform or to respond in monetary damages, and (3) that punitive damages could not be collected against it without proving that the surety had participated in, authorized, or ratified conduct of the principal amounting to malice.

The aggregate sum, according to the stipulation between the parties, breaks down into the following categorical amounts of both fees and expenses:

"(1) For legal research and attendance at depositions directly related to the surety's defenses separate and apart from the principal's defenses against liability on the underlying contract. . . . . . . . . . . . . . . . . . . . . . . . $2,685.58

"(2) For legal research on a possible defense against the University's claim on the bond based on the coal supplier's fraud. . . . . . . . 500.00

"(3) For attendance at depositions related to the principal's defenses on the underlying contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,852.18

"(4) For attendance at and participation in the trial (six full days). . . . . . . . . . . . . . . . . . . . . . . 3,630.00

"(5) For all other services performed and advances made by the surety's counsel during the period they were retained to represent the surety's interests in the litigation. . . . . . . . . . . . . 11,714.18

"Aggregate   amount                              $20,381.94"

We hold that the principal's agreement to indemnify the surety in the language quoted above is limited to those counsel fees and expenses that have a rational and reasonable relation to the surety's actual and potential liabilities arising directly from the bonded transaction, reasonable in amount and incurred in good faith. Thus, the surety was entitled to categorical amounts (1) and (2) above, because these amounts were incurred in exploring and asserting the surety's separate defenses against liability on the bond and have a reasonable and rational relation to its potential liability arising directly from the bonded transaction. The trial court awarded judgment in an amount equal to category (1), and we affirm that award, simultaneously adding the amount of category (2) because that amount falls within the guidelines of having a reasonable and rational relation to the surety's liability on the bond.

We reject the surety's position that the language of the indemnity would permit it to recover all fees and expenses incurred or paid by it in its sole discretion, limited only by its

good faith. We are unwilling to open up the possibility that such an interpretation might allow the surety to recover remotely connected expenses (such as a proportionate part of its corporate overhead) each time it suffered a loss on a bond. We reject all claims for recovery of fees and expenses paid for duplication of services that is, for services which were simultaneously being rendered competently by the principal's counsel in preparing for and participating in the trial on the merits of the University's claim against the principal (categories [3] and [4] above). We also reject all claims for category (5), or general services not specific in content or purpose.

Finally, we reject all claims for the surety's legal costs in protecting its position as a claimant against the principal and in assuring that the principal would obtain a large recovery against the wrongdoing third party in order to have sufficient assets to reimburse the surety despite the principal's precarious financial condition. The indemnity agreement covered expenses the surety incurred as surety, not as indemnitee looking for full reimbursement. If the parties had intended that the principal should pay the surety's attorney's fees incurred in collecting against it, language to that effect might conceivably have been placed in the indemnity agreement, but it was not.

We find that our decision is one of first impression in Ohio but comports with decisions from some other states. [2]

---

[2] One uniform guideline is that the surety must have acted in good faith in incurring the attorney fees and expenses, whatever may be the other criteria for recovery.

The following cases hold that the surety may recover fees and expenses only when it was reasonably necessary to incur them: *Central Towers Apartments, Inc.* v. *Martin* (1969), 61 Tenn. App. 244, 453 S. W. 2d 789; and *Maryland Casualty Co.* v. *Wood* (1944), 296 Ky. 476, 177 S. W. 2d 365. The amount must be reasonable and the obligation incurred with reasonable discretion, *Maryland Casualty Co.* v. *Ballard* (1927), 126 Okla. 270, 259 P. 528.

The following cases hold that the surety may recover the fees and expenses it incurs provided the amount thereof is reasonable: *U. S. Fidelity & Guaranty Co.* v. *Falk* (1943), 214 Minn. 138, 7 N. W. 2d 398; and *Kilgore* v. *Union Indemnity Co.* (1931), 222 Ala. 375, 132 So. 901.

On the contrary, the following cases hold that the surety may recover whatever fees it incurs in its discretion: *J. D. Halstead Lumber Co.* v. *Hartford Accident & Indemnity Co.* (1931), 38 Ariz. 228, 298 P. 925; *U. S. Fidelity & Guaranty Co.* v. *Hittle* (1903), 121 Iowa 352 96 N. W. 782.

We determine that the judgment of the trial court should be modified as a matter of law, pursuant to App. R. 12 (B). We modify the judgment for appellant by adding the amount of $500 and order judgment in favor of Sentry Insurance against Davison Fuel & Supply Company in the amount of $3,185.58 and, as modified, we affirm the judgment below.

*Judgment affirmed as modified.*

KEEFE, P. J., and BETTMAN, J., concur.