The **BUCKEYE UNION INSURANCE COMPANY, Plaintiff,**

v.

**Harry C. BOGGS and Betty J. Boggs, Defendants.**

Civ. A. No. A:85–0502.

United States District Court, S.D. West Virginia, Parkersburg Division.

Feb. 21, 1986.

Richard T. Jones, Michael T. Chaney, Kay, Casto & Chaney, Charleston, W.Va., for plaintiff.

Guy E. McGaughey, Jr., McGaughey & McGaughey, Lawrenceville, Ill., Lee Benford, Hash & Benford, Ravenswood, W.Va., for defendants.·

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

This case presents an unusual situation for the Court. It is currently before the Court on two dispositive motions by the Plaintiff: a fairly standard motion for summary judgment and a "Motion for Judgment by Default." The motions are unrelated. The Defendants have apparently chosen to ignore both motions. They have not responded with either memoranda or affidavits. Before turning to the merits of either motion, the Court will review the brief history of this case.

### I. *Background*

The Plaintiff filed its complaint on April 26, 1985. The complaint alleges that the Defendants executed and delivered to the Plaintiff on or about October 5, 1973, an agreement of indemnity. In reliance upon the agreement of indemnity, the Plaintiff executed various surety bonds to Orlando Coals, Inc., the contractor named in the agreement of indemnity. The Plaintiff further alleges that by the terms of the agreement the Defendants jointly and severally agreed to indemnify the Plaintiff for any expenses or liability incurred by reason of the Plaintiff's execution of the bonds. The Plaintiff alleges that it has suffered losses in the total amount of $129,000 and that the Defendants have refused to provide indemnity.

The Defendants failed to timely answer the complaint. On May 28, 1985, the Clerk notified counsel that there had been a fail-

ure to answer within the appropriate time frame. He directed counsel to take the appropriate steps to dismiss the Defendants or to cause default to be entered.

On June 13, 1985, the Defendants having yet to file an answer, the Court by Order directed the Clerk to enter the Defendants' default. The Order directed the Plaintiff's counsel to submit the appropriate documents to facilitate the final entry of default. Thereafter, on July 1, 1985, the Plaintiff filed its motion for judgment by default.[1]

Also on July 1, 1985, the Defendants filed their motion to set aside entry of default. Such was their first activity in the case. On July 3, 1985, the Court granted the Defendants' motion and directed the Clerk to file their answer.

On August 8, 1985, the Court issued a Pretrial Procedures and Final Scheduling Order which, *inter alia*, set the discovery cutoff date as November 11, 1985. On November 8, 1985, the parties filed an agreed order, approved by the Court, which extended discovery to November 25, 1985.

The Plaintiff served interrogatories and request for production of documents on the Defendants on September 30, 1985. The discovery requests were ignored by the Defendants. The Plaintiff moved to compel production. In an Order dated December 13, 1985, the Court directed the Defendants to answer and respond to the discovery within fourteen days. The Defendants were advised in the Order that failure to comply might result in sanctions being imposed against them, including "the entry of judgment against them without trial." The Defendants did not comply with the Order. The discovery is apparently unanswered at even this date. Moreover, on October 1, 1985, the Plaintiff noticed the Defendants for depositions to be taken on November 6, 1985. The Defendants did not appear as requested.

II. *Motion for Judgment by Default*

As a result of the Defendants' failure to comply with the Plaintiff's discovery as ordered by the Court, the Plaintiff has moved the Court to enter judgment by default in its favor against the Defendants, jointly and severally. In so moving, the Plaintiff cites *Rule* 55 of the Federal Rules of Civil Procedure. Even more apposite is *Rule* 37. The following language of *Rule* 37(b)(2) addresses the type of situation presented by this case:

"(2) If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

\*    \*    \*    \*    \*    \*

(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, *or rendering a judgment by default against the disobedient party.*"

*Rule* 37(b)(2), Federal Rules of Civil Procedure (emphasis added).

The Fourth Circuit in *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir.1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978), extensively reviewed the circumstances under which a judgment by default may be entered against a disobedient defendant. It noted that the sanction of default judgment is "the most severe in the spectrum of sanctions provided by statute or rule." *Id.* at 503 (*quoting National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976)). With that note, the *Wilson* court set forth some controlling principles to be considered by the sanctioning court:

"[T]he Trial Court's 'range of discretion is more narrow' than when the Court is imposing other less severe sanctions. The reason for this narrower range of discretion is that the sanction of a default judgment, though 'a rational method of enforcement of the discovery rule,' in an appropriate case, represents in effect 'an infringement upon a party's

---

**1.** This is not the motion for judgment by default which is currently before the Court.

right to trial by jury under the Seventh Amendment' and runs counter to 'sound public policy of deciding cases on their merits,' and against depriving a party of his 'fair day in court.' Because of the importance of these constitutional and policy considerations, a leading text has stated that the exercise of the power should be confined to the 'flagrant case' in which it is demonstrated that the failure to produce 'materially affect[s] the substantial rights of the adverse party' and is 'prejudicial to the presentation of his case.' This is so because a default judgment should normally not be imposed so as 'to foreclose the merits of controversies as punishment for general misbehavior' save in that rare case where the conduct represents such 'flagrant bad faith' and 'callous disregard' of the party's obligation under the Rules as to warrant the sanction not simply for the purpose of preventing prejudice to the discovering party but as a necessary deterrent to others. Even in those cases where it may be found that failure to produce results in the discovering party's case being jeopardized or prejudiced, it is the normal rule that the proper sanction 'must be no more severe ... than is necessary to prevent prejudice to the movant.' Accordingly, in determining whether to impose such sanction, the needs of the discovering party must be evaluated as well as the nature of the non-compliance and the Trial Court must consider 'how the absence of such evidence [not produced] would impair [the other party's] ability to establish their case' and whether the non-complying party's conduct [in not producing documents] would deprive [the other party] of a fair trial.' "

*Id.* at 503–05 (footnotes and citations omitted).

In their answer, the Defendants asserted an affirmative defense to what might be considered a rather straightforward case of contractual liability. The Plaintiff, right-

fully curious about this supposed defense to its claim, served twenty-two interrogatories upon the Defendants. About half of the interrogatories dealt with the affirmative defense.[2] The Plaintiff also noticed the Defendants for a deposition. As previously mentioned, the Defendants have not answered the interrogatories and requests for production of documents or allowed themselves to be deposed.

The prejudice to the Plaintiff is not difficult to discern. As the trial date approaches, it is left in the dark both factually and legally as to the basis for the Defendants' defense. For instance, the Defendants assert that they could have reclaimed the coal property subject to the bonds at a lower cost than the amount of the bonds. The Plaintiff, however, has not been given access to information which might prove or disprove this assertion. Moreover, the Plaintiff has been precluded from gaining insight into the legal theory which the Defendants might try to employ. In short, the Defendants have effectively frustrated the Plaintiff's preparation for the case.

Mindful that the sanction should be tailored to fit the misconduct, the Court has considered striking only the affirmative defense of the Defendants. The limited effect of such a sanction, however, is illusory. Practically, such a sanction would make judgment for the Plaintiff at trial a foregone conclusion. On the other hand, the conduct of the Defendants is so egregious that a lesser sanction is not suitable. Therefore, the Court finds that there is no reasonable alternative to an entry of default judgment. This finding is made with the thought in mind that judicial economy is fostered by not bringing to trial litigants which have been rendered defenseless.

The *Wilson* court expressed concern about denying litigants their right to trial. The United States Supreme Court has since reaffirmed that in instances of default

---

**2.** The other interrogatories were directed to paragraphs of the Defendants' answer which

denied knowledge of the Plaintiff's allegations.

judgment the "preservation of due process [is] secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense." *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982) (*quoting Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 350–51, 29 S.Ct. 370, 379–80, 53 L.Ed. 530 (1909)). In other words, there is a presumption that the discovery sought would be adverse to the Defendants because of their repeated and knowing refusal to answer the discovery requests. *Joselson v. Lockhart-Bright Associates*, 95 F.R.D. 160, 163 (E.D.Pa.1982). Given this presumption, it can be said that the Defendants have waived their right to trial provided by the system for which they have shown so little respect.

This result may seem harsh, but the Court believes it is justified where one party has shown a complete disregard for Court orders which were quite reasonable. The Court also explicitly warned the Defendants of the danger which they risked by their recalcitrant behavior. The Defendants, however, chose to disregard the Court order in not one, but two respects: (1) not answering the interrogatories and request for production, and (2) not appearing for the depositions. The Defendants have at no time filed objections to the interrogatories or sought a protective order. Even the Plaintiff's motion for default judgment—clear notice of the consequences at hand—has elicited no response. The Court can only conclude that future attempts to induce compliance will meet with no greater success. Entry of default judgment will in this instance cure the prejudice suffered by the Plaintiff, punish the offending parties and defer similar disrespect for Court orders in the future. *Id.* at 162–63.

### III. *Motion for Summary Judgment*

Any unease which the Court may have for the severe sanction of default judgment is tempered in this instance by the alternative holding that the Plaintiff is also entitled to summary judgment both as to liability and to damages. Indeed, perhaps the Defendant's visible lack of effort is tied to their weak position on the merits. The Defendants admit in their answer that they executed and delivered an agreement of indemnity to the Plaintiff. This agreement, in Section 2, provided as follows:

> "The Contractor [Orlando Coals, Inc.] and Indemnitors, [Harry C. Boggs and Betty J. Boggs] shall exonerate, indemnify, and keep indemnified the Surety [Buckeye Union Insurance Company] from and against any and all liability for losses and/or expenses of whatsoever kind or nature ... and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed ... the Bonds, .... [T]he Surety, Buckeye Union, shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the surety shall be prima facie evidence of the fact and amount of the liability to the surety."

In regard to notice, the agreement provided the following in Section 11:

> "Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Contractor and the Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defens-

es they might have been entitled to make."

It is abundantly clear from the terms of the agreement that the Defendants were to indemnify the Plaintiff for losses and liabilities it incurred as a result of surety bonds that the Plaintiff executed for Orlando Coals, Inc. The Plaintiff has submitted an affidavit stating that it has incurred losses of $129,000 as a result of executing the said bonds. The Defendants' lack of response to the Plaintiff's motions and affidavits runs counter to the mandate of *Rule* 56(e):

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The Court here finds that summary judgment is appropriate as a matter of law. No genuine issue of material fact exists as to either liability or damages. Particularly, in regard to damages, Plaintiff's claim of $129,000 has not been controverted.[3]

### IV. *Conclusion*

For the foregoing reasons, the Court finds that the Plaintiff, The Buckeye Union Insurance Company, is entitled to judgment against the Defendants, Harry C. Boggs and Betty J. Boggs, on two grounds: (1) by default for failing to comply with Orders of this Court; and (2) by summary judgment for failing to show the existence of any genuine issue of material fact. The Court will, therefore, enter an Order providing that the Plaintiff shall recover of the Defendants the sum of $129,000 plus interest at the lawful rate from the date of the

Order, as well as certain costs of the action.

---

**3.** As to the question of damages on the default judgment ruling, *Rule* 55(b)(2) provides for a hearing on damages if necessary. The Court does not find such a hearing to be necessary in this instance. The motion of the Plaintiff for default judgment specified the amount which the Court now awards. The Defendants thus knew of the amount claimed. *See U.S. v. deFrantz,* 708 F.2d 310, 312–13 (7th Cir.1983).