## CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County Board of Supervisors

v.

Culbertson Construction Co. et al.

November 17, 1987

Case No. (Law) 69951

By JUDGE THOMAS A. FORTKORT

This case involves an indemnity agreement between Republic Insurance Company and Culbertson Construction Company. The agreement was executed so that Culbertson could secure performance bonds on a construction contract it had with Fairfax County. When Culbertson defaulted on the project, the County sued Culbertson as obligor and Republic as surety on the performance bonds. Pursuant to a subsequent settlement agreement, the County released Republic which in turn agreed to fulfill Culbertson's obligations.

Republic hired The Kauffman Group to finish the project. It then filed a cross-claim against Culbertson and the other indemnitors seeking reimbursement under the Indemnity Agreement for its expenses in completing the job.

At trial, Plaintiff attempted to establish that Republic negligently permitted Kauffman's work to exceed the terms of the original contract between Culbertson and the County.

Essentially, Culbertson alleges that Kauffman satisfies the inspection requirements of the County by exceeding the scope of the project for the benefit of the sub-division homeowners, who then stop complaining to the County about the contractor's work. Republic responded to this charge by labelling Culbertson as an inexperienced contractor

who used equipment inadequate for the undertaking and who was loathe to expend the funds needed to finish the project in a workmanlike manner.

Culbertson says that Republic is entitled to reimbursement only for those items which fall within the contract and that in this case, going beyond the contract was either negligently done or done in bad faith by Republic. Republic asserts that, under the terms of the Indemnity Agreement,[1] it is entitled to reimbursement for all expenditures made "in good faith" to complete the project, "whether liable or not . . . whether necessary or not." In short, Republic contends the Agreement absolves it from its own negligence, as long as the expenditures were made in good faith.

### I. *Surety Can Indemnify Itself Against Its Own Negligence*

The majority view of courts who have examined surety indemnification contracts containing language similar to the case at bar uphold such provisions. There is no Virginia case authority which addresses the precise issue as to the interpretation of these clauses in indemnity agreements.

Since no Virginia authority directly adopts or refutes the majority view, the Court may refer to established indemnity principles and public policy considerations to find that a surety is entitled to reimbursement for only his reasonable expenditures.

---

[1] Under paragraph 2 of the Indemnity Agreement, the indemnitors agreed to indemnify Republic "against any and all liability . . . of whatever kind or nature which [Republic] may sustain or incur by reason or in consequence of executing any such bond or bonds as surety."

Under paragraph 6, the indemnitors agreed to reimburse Republic for the full amount in settlement of any claim under the bonds paid by Republic "in good faith under the belief that it . . . [was] liable therefore, whether liable or not, as well as any and all disbursements [Republic] made under the belief that such were necessary, whether necessary or not."

## II. *Argument - The Majority Rule and Some Distinctions*

Suretyship is a relation whereby one person, the surety, is answerable for the obligations of another, his principal, upon the latter's default. It is essentially a contractual relation which may be created by either express contract or operation of law. Whether and to what extent a surety is entitled to reimbursement from his principal for costs incurred in satisfying the principal's obligations depends largely on how the suretyship arose.

In suretyships implied at law, the rights and obligations of the parties are generally determined by common law indemnity principles and equitable considerations. The same is not true in suretyships created by express contract. The majority of jurisdictions which have considered the surety's right to reimbursement under an indemnity agreement rely upon the actual contractual language employed. As the United States Court of Appeals for the Fourth Circuit has noted, " 'resort to implied indemnity principles is improper when an express indemnification contract exists'; when there is such an express indemnification contract, 'a surety is entitled to stand upon the letter of his contract'." *Fidelity & Deposit Co. of Maryland v. Bristol Steel*, 722 F.2d 1160, 1163 (4th Cir. 1983) (*quoting Com'l Ins. Co. of Newark v. Pacific-Peru Const.*, 558 F.2d 948, 953 (9th Cir. 1977).

In *Bristol Steel* the court construed contractual language virtually identical to that in the case at bar. The principal claimed that his surety failed to exercise good faith when it paid a bond although the principal's liability had not been established. The court held that the surety was nevertheless reasonably justified in paying the bond in order to prevent its disqualification as surety on future projects. In reaching its decision the court noted that the contractual provisions did not violate public policy and were uniformly upheld subject to only one exception: when payment is made fraudulently or in bad faith. 722 F.2d 1163. The court also found that the principal knew of the payment before it was made and, in failing to object, acquiesced in the surety's performance.

The rule in *Bristol Steel* has been adopted by virtually every jurisdiction that has considered the issue and

supports the position that Republic asks this Court to adopt. Indeed the cases upon which Republic relies expressly support the view. *See Continental Casualty v. Marman Development Corp.*, 198 N.Y.S.2d 375 (N.Y. Sup. Ct. 1960); *United States Fidelity and Guarantee Co. v. Napier Electric & Construction Co.*, 571 S.W.2d 644 (Ky. App. 1978), and *Hartford Accident and Indemnity Co. v. Millis Roofing and Sheet Metal, Inc.*, 418 N.E.2d 645 (Mass. App. 1981).

With the exception of *Continental Casualty*, none of the cases above involved allegations that the surety was negligent in exceeding the terms of the original contract. In *Bristol Steel* the surety paid the penal amount of the original contract without establishing the principal's liability. In *Napier Electric*, the surety satisfied the principal's obligation by paying the "amount necessary to complete the performance of the contract." 571 S.W.2d at 646. In *Millis Roofing*, the surety completed the contract in good faith despite its failure to investigate the claim and defend his principal before paying.

Although *Continental Casualty* involved work which allegedly exceeded the original contract, the court found that the principal had sufficient notice of the claims against him yet failed to object to the surety's proposed action. As a result, the court held that the principal could not contest the surety's performance when, under the indemnity agreement, he had every right to dispute or litigate the claim. 198 N.Y.S.2d at 376.

In the case at bar, Culbertson had the right to contest the County's suit but agreed to the settlement between the County and Republic. Culbertson probably had little chance of defending his suit against the County because of his numerous failures to meet the original deadline and the extended deadlines. Culbertson through his counsel did object to the work being done by Kauffman as beyond his contract with the County.

The Court is of the opinion that under the test in *Continental Casualty*, Culbertson's objections to Kauffman's invoices may be sufficient to distinguish that case from the case at bar.

Nevertheless, the Court believes that the language in the Republic-Culbertson indemnity agreement is sufficient to invoke the rule generally followed in other jurisdictions. Nevertheless, to adopt a rule that the indemnity

agreement would allow contractors to be liable for work beyond the original contract would be unfair and perhaps lead to collusion between the surety and local government officials. On the other side, the surety having had to answer to his principal's default ought not to be put to the test of proving each and every piece of completion work was done in a reasonably prudent fashion. This balance must be made in light of public policy considerations.

## III. *Public Policy Considerations*

Despite the majority's overwhelming reliance on contractual language when express indemnity agreements exist, two public policy considerations suggest that Culbertson should not be liable for Republic's negligence, even if expressly bargained away.

First, Republic, as surety, is not entitled to profit at the expense of its principal. Restatement of Restitution sect. 80(a) Comment a. The relationship between a surety and his principal is regarded as special because of the existence of reciprocal duties and mutual confidences. *See generally Etter v. Industrial Valley Bank & Trust Co.*, 515 A.2d 6 (Pa. Super. 1986) (discussing the nature of suretyship). When the surety satisfies his principal's obligation, he is entitled to indemnification unless precluded by his wrongful conduct. Restatement of Restitution sect. 76 (1936). This principal applies whether or not there is an express agreement, although it is subject to that agreement. *Id.*, Comment b. When the surety discharges such an obligation, his right of reimbursement is limited to his reasonable expenditures because the right to indemnification is equitable in nature and is designed to prevent unjust enrichment. Restatement of Restitution § 80(a) Comment a; Restatement of Security, sect. 104 Comments f and h (1941). Although no fiduciary relationship exists, the surety is not entitled to profit at the expense of his principal. Restatement of Restitution sect. 80(a) Comment a.

These principles are applicable to the case at bar. In fact, the Restatement of Security provides an illustration directly on point:

> S guarantees the performance by P of a building contract with C. S has the privilege of performing in the event of P's default. P defaults and S exercises his privilege of completing the building. The completion of the work results in an outlay by S of $15,000. P is able to prove that S, by purchasing materials from a favored seller in excess of the market price, has made unnecessary expenditures of $3,000. S is entitled to be reimbursed only for $12,000.

Restatement of Security § 104 Comment d, Illustration 1. As the illustration demonstrates, to the extent Culbertson can prove Republic's expenditures were unreasonable or unnecessary, Republic's right of indemnification should be reduced accordingly lest it profit at the expense of indemnitors.

Second, Republic's broad and unfettered right to indemnification under the agreement would be inconsistent with the public interest. Performance bonds are typically required by governmental bodies to ensure the completion of public projects. Local governments are empowered by Section 15.1-466 of the Virginia Code (Supp. 1987) to require such bonds. One of the principal purposes of this statute is to ensure performances as required by state and local standards so that the public will be relieved to the extent of any burden that would otherwise exist. *Board of Supervisors of Fairfax County v. Ecology One, Inc.*, 219 Va. 29 (1978).

If indemnity provisions were interpreted and enforced in the manner Republic asks this Court to do, contractors and the public would be overly burdened. Many contractors, especially small, local ones, would be hesitant to enter such indemnity agreements and perhaps financially unable to assume the risk. Such contractors would be precluded from obtaining local government projects. Those which would take the risk would be more expensive. Thus, local governments would have to either accept higher bids at a greater cost to the public or eliminate bonding requirements thereby destroying the very benefit sought to be secured by the bond requirements.

In short, despite the broad contractual provisions of the Indemnity Agreement, Republic's right to indemnifica-

tion might properly be qualified to conform with the above public policy considerations.

In the case at bar, while the Court accepts Culbertson's legal argument and agrees that the points made therein are substantial, it must find in favor of Republic on many of the facts: Culbertson was able to show that Kauffman made certain field specification changes to solve certain flooding problems; that he redid work Culbertson found acceptable; Kauffman made improvements that were outside the boundaries of the particular sub-division, and Kauffman did work on private lots outside the contract and where recovery was granted in another suit.

From the evidence, the Court finds that adherence to every minute detail of a large project as planned is almost a physical impossibility. Every contractor faces the problem of adopting plans as designed to the reality of what exists in the field. Where designs for a myriad number of reasons cannot be made to work in the field, then they must be altered to the best possible and hopefully least expensive method of meeting code requirements. The Court finds the solution to the water overflow problem used by Kauffman to be within normal field solutions used by contractors.

Using Culbertson's view of what is acceptable to the Code is a chancy gambit. Culbertson had failed for years to bring this subdivision to completion. His over-frugal approach and method of operation gives the Court no cause to rely on his testimony that portions of the work done were already in compliance with the Code. The Court finds defendant's evidence more believable in this regard.

The improvements made outside the subdivision boundaries were necessary to the work on the subdivision and do not constitute work outside the contract. The work done on private lots was outside the work contemplated by the original agreement and is not recoverable, i.e., $14,735.32. Finally, the Court will allow Mr. Sabourin to make a claim for attorney fees.