

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-1997

# Fallon Elec Co Inc v. Cincinnati Ins Co

Precedential or Non-Precedential:

Docket 96-3559,96-3560

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Fallon Elec Co Inc v. Cincinnati Ins Co" (1997). *1997 Decisions.* Paper 183.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/183

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

iled July 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-3559 and 96-3560

FALLON ELECTRIC CO., INC.

v.

THE CINCINNATI INSURANCE COMPANY,

Third-Party Plaintiff

v.

RAVIN, INC.; RALPH P. MUROVICH;
DARLENE A. MUROVICH,

Third-Party Defendants

The Cincinnati Insurance Company,

Appellant No. 96-3559

COREY FOOD SERVICE EQUIPMENT, INC.

v.

THE CINCINNATI INSURANCE COMPANY,

Third-Party Plaintiff

v.

RAVIN, INC.; RALPH P. MUROVICH;
DARLENE A. MUROVICH,

Third-Party Defendants

The Cincinnati Insurance Company,

Appellant No. 96-3560

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 94-cv-01079 and 94-cv-01519)

Argued June 13, 1997

BEFORE: COWEN, ALITO and GARTH, <u>Circuit Judges</u>

(Filed July 30, 1997)

Jack W. Plowman, Esq.
David Raves, Esq. (Argued)
Plowman, Spiegel & Lewis
310 Grant Street
The Grant Building, 2nd Floor
Pittsburgh, PA 15219-2204

COUNSEL FOR APPELLANT
Cincinnati Insurance Company

Gerard J. Cipriani, Esq.
Anthony W. Hinkle, Esq. (Argued)
Cipriani & Werner
2500 Two Oliver Plaza
Pittsburgh, PA 15222

COUNSEL FOR APPELLEES
Ravin, Inc.
Ralph P. Murovich
Darlene A. Murovich

**OPINION OF THE COURT**

COWEN, <u>Circuit Judge</u>.

This is an appeal from the July 24, 1996, judgment of
the district court awarding appellant Cincinnati Insurance
Company ("CIC") attorney's fees in the amount of
$53,429.21 and expenses of $1,417.00. CIC has appealed
the amount of fees awarded by the district court and it

2

requests an order directing an award of its attorney's fees incurred on this appeal. We will vacate the judgment of the district court and remand with instructions to enter judgment in favor of CIC in the amount of $87,752.24 in attorney's fees and $1,417.00 in expenses heretofore approved.

**I.**

In 1993, appellee Ravin, Inc. was awarded a general contract on a construction project located in Westmoreland County, Pennsylvania. Ravin, Inc. contracted with a number of subcontractors to perform various jobs. Ravin, Inc. obtained from CIC a labor and materials payment bond, under which CIC agreed to act as Ravin Inc.'s surety and to make payments to the subcontractors in the event that Ravin, Inc. failed in its obligation to do so. In exchange, Ravin, Inc. and its owners, appellees Ralph and Darlene Murovich (collectively "Ravin"), executed an indemnity agreement that provided that they would

exonerate, indemnify and keep indemnified [CIC] from and against any and all liability for losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel, and against any and all said losses and expense which [CIC] may sustain or incur: (i) by reason of having executed or procured the execution of any Bond or Bonds; (ii) by reason of the failure of [Ravin] to perform or comply with the covenants and conditions of this Agreement; or (iii) in enforcing any of the covenants and conditions of this Agreement. [CIC] may pay or compromise any claim, demand, suit, judgment or expense arising out of such Bond or Bonds and any such payment or compromise shall be binding upon [Ravin] and included as a liability, loss or expense covered by this Indemnity Agreement, <u>provided the same was made by [CIC] in the reasonable belief that it was liable for the amount disbursed, or that such payment or compromise was reasonable under all of the circumstances</u>. In the event of any such payment or compromise by [CIC], <u>an itemized statement thereof sworn to by any representative of [CIC] familiar with the facts, or the</u>

3

> voucher or vouchers or other evidence of such payment
> or compromise shall be prima facia [sic] evidence of the
> facts and the amount of the liability of [Ravin] under
> this Agreement.

App. at 30 (emphasis added).

Fallon Electric Company and Corey Food Service Equipment, two of the subcontractors, subsequently brought this action against CIC in the district court. Fallon and Corey alleged that Ravin had failed to pay them for materials they had provided for the project. They asserted that CIC was liable for these amounts pursuant to the payment bond. CIC subsequently joined Ravin pursuant to the indemnity agreement for any losses it would incur as a result of the litigation, including the costs of the suit. Fallon and Corey then added claims against Ravin for the amounts they had sought from CIC. Ravin contested its liability to Fallon and Corey, relying on the same affirmative defenses raised by CIC. CIC and Ravin each retained separate counsel. Ravin also contested its liability under the indemnity agreement. Before trial the district court ruled that the indemnity agreement was valid and enforceable.

CIC's counsel was present at trial but did not cross-examine any witnesses, relying on Ravin's counsel for that purpose. Before the trial was concluded, CIC and Ravin settled Fallon's and Corey's claims. CIC then sought $87,752.24 in attorney's fees and $1,417.00 in expenses from Ravin pursuant to the indemnity agreement, incurred in defending Fallon's and Corey's suit, as well as actions brought by several other subcontractors that were then pending in state court.

The district court reviewed testimony from the trial in order to determine the amount of attorney's fees and expenses CIC should be awarded. At trial, CIC introduced testimony regarding the attorney's fees and expenses it incurred. Ravin conducted a short cross-examination of CIC's witness. See App. at 171–74. However, Ravin did not introduce any evidence to demonstrate that the fees were incurred unreasonably, in bad faith, or through fraud, or that CIC acted unreasonably in paying the fees.

4

On July 24, 1996, the district court awarded CIC expenses in the requested amount of $1,417.00. However, it awarded CIC attorney's fees in the amount of only $53,429.21, some $34,000 less than the sum requested by CIC. The district court concluded that the excess amount of attorney's fees sought by CIC was not incurred out of reasonable necessity. CIC appeals. Ravin has not cross-appealed.

**II.**

The district court exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1993). Fallon, Corey, and Ravin are all Pennsylvania corporations with their principal places of business in Pennsylvania. The Muroviches are residents of Pennsylvania. CIC is an Ohio corporation with its principal place of business in Ohio. The amount in controversy exceeds $50,000. This Court has jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291 (1993).

**III.**

The parties agree that the indemnity agreement is governed by Pennsylvania law. CIC argues that the district court erred by imposing a reasonableness requirement on the amount of attorney's fees, especially in light of the "prima faci[e] evidence" language in the indemnity agreement. App. at 30. In addition, Ravin offers two reasons that the judgment of the district court should be reversed or modified in its favor. We will address these issues in turn.

**A.**

Pursuant to Pennsylvania law, in construing an indemnity agreement, as with any other contract, the court must determine the intentions of the parties. See Brotherton Constr. Co. v. Patterson-Emerson-Comstock, Inc., 178 A.2d 696, 697 (Pa. 1962); Fulmer v. Duquesne Light Co., 543 A.2d 1100, 1104 (Pa. Super. 1988). Such intentions should be ascertained primarily by looking to the language used in

5

the agreement. See Brotherton, 178 A.2d at 697; Emery v. Metzner, 156 A.2d 627, 630 (Pa. Super. 1959).

CIC argues that, in light of the "prima faci[e] evidence" language in the indemnity agreement, the district court erred in imposing on CIC the burden of proving that the attorney's fees it sought were incurred out of reasonable necessity. We agree.

The district court cited cases from various jurisdictions in support of its conclusion that "a surety may recover fees and expenses under an indemnity agreement only if it was `reasonably necessary' for the surety to incur them . . . even where the contract of indemnity contains no explicit provision mandating reasonableness on the part of the surety." App. at 284 (citing United States Fidelity and Guar. Co. v. Love, 538 S.W.2d 558, 559 (Ark. 1976); Redfern v. R.E. Dailey & Co., 379 N.W.2d 451, 456–57 (Mich. Ct. App. 1985); Perkins v. Thompson, 551 So.2d 204, 209 (Miss. 1989); Sentry Ins. Co. v. Davison Fuel & Dock Co., 396 N.E.2d 1071, 1074 & n.2 (Ohio Ct. App. 1978); Central Towers Apts., Inc. v. Martin, 453 S.W.2d 789, 799 (Tenn. Ct. App. 1969); James Constructors, Inc. v. Salt Lake City Corp., 888 P.2d 665, 667, 668–69 (Utah Ct. App. 1994)). The district court concluded "that the Pennsylvania Supreme Court would adopt this well–reasoned line of authority." Id. at 285. It expressly placed the burden of proving reasonable necessity upon CIC and found that CIC had not sustained that burden as to a portion of the requested fees. See id. at 286–87.

The district court was correct that several courts have imposed on indemnitees the burden of proving the reasonable necessity of attorney's fees sought pursuant to indemnity agreements. However, none of the cases cited involved indemnity agreements that contained the same "prima faci[e] evidence" language at issue here. See Love, 538 S.W.2d at 558; Redfern, 379 N.W.2d at 454–55; Perkins, 551 So.2d at 209; Sentry, 396 N.E.2d at 1072; Central Towers, 453 S.W.2d at 793–94; James, 888 P.2d at 668.

Although neither the Pennsylvania courts nor we have ruled on the issue of the effect of such language, 1 various

_____

1. CIC places great reliance on an unpublished opinion of this Court, American States Ins. Co. v. Uhutch, No. 89–3083 (3d Cir. Jan. 24, 1990).

6

other courts have. The opinions of these courts demonstrate that the "prima facie evidence" language at issue here shifts to the indemnitor the burden of proving the fees are excessive. How the indemnitor may prove that the fees may not be recovered is dependent upon the language of the indemnity agreement.

For example, in Transamerica Premier Ins. Co. v. Nelson, 878 P.2d 314, 318 (Nev. 1994) (per curiam), the Nevada Supreme Court noted that the indemnity agreement there provided "that in any claim or suit, an itemized statement of expenses is prima facie evidence of the fact and extent of the liability of the indemnitor." The indemnitor had agreed to reimburse the indemnitee "for all expenses incurred in good faith." Id. at 316. The court held that the "good faith" language obviated any inquiry into the reasonableness of the costs incurred and required that the court consider "only whether the attorney's fees were incurred in good faith." Id. at 317. The court stated: "When the parties contractually agree that good faith is the standard, undertaking a determination of anything other than good faith is inappropriate." Id. The court further concluded that the "prima facie evidence" language shifted to the indemnitor the burden of proving bad faith. See id. at 318.

Similarly, in United States Fidelity & Guar. Co. v. Napier Elec. & Constr. Co., 571 S.W.2d 644, 645 (Ky. Ct. App. 1978), the indemnity agreement provided that the indemnitor would be liable to the surety

for all "liabilities, losses and expenses" incurred by [Surety], including all amounts paid by [Surety] "in good faith under the belief that: (1) Surety was or might be liable therefor; (2) Such payments were necessary or advisable to protect any of Surety's right or to avoid or lessen Surety's liability or alleged liability."

(quoting indemnity agreement). The agreement further provided that "vouchers or other evidence of payments or

_____

However, the Court does not regard such opinions as binding precedent. See Third Circuit Internal Operating Procedures ch. 5.8 (1994).

an itemized statement of payments sworn to by an officer of the surety shall be prima facie evidence of the fact and extent of the liability of the indemnitor to the surety." Id. at 646. The court held that under such an agreement, "the indemnitor may successfully attack payments made by the surety only by pleading and proving fraud or lack of good faith by the surety." Id.

Finally, in Hawaiian Ins. & Guar. Co. v. Higashi, 675 P.2d 767, 769 (Haw. 1984), the Hawaii Supreme Court addressed, albeit in dictum, the situation where an indemnity agreement provides that payment of monies by an indemnitee is prima facie evidence of an indemnitor's liability. The court wrote: "Obviously, where such a provision is in the agreement, the burden of proof on th[e] issues [of reasonableness and good faith] shifts." Id.

In addition to the courts in Nelson, Napier Electric, and Higashi, several courts have noted that such a "prima facie evidence" clause in an indemnity agreement is valid and enforceable. See, e.g., Continental Cas. Co. v. American Sec. Corp., 443 F.2d 649, 652–53 (D.C. Cir. 1970) (per curiam); Transamerica Ins. Co. v. Bloomfield, 401 F.2d 357, 362 (6th Cir. 1968) (applying Tennessee law); Carroll v. National Surety Co., 24 F.2d 268, 270 (D.C. Cir. 1928); International Fidelity Ins. Co. v. United Constr., Inc., No. 91–2361, 1992 WL 111368, at *2–3 (E.D. Pa. May 15, 1992) (applying Pennsylvania law); Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins., No. 83–5733, 1989 WL 55388, at *3 (E.D. Pa. May 23, 1989) (same); Buckeye Union Ins. Co. v. Boggs, 109 F.R.D. 420, 423–24 (S.D. W. Va. 1986) (applying West Virginia law); Commercial Union Ins. Co. v. Melikyan, 430 So.2d 1217, 1221 (La. Ct. App. 1983). While these courts have declined to state the precise effect of such language, Ravin has not cited a single case for the proposition that the language has no effect whatsoever or that the effect of such language is anything other than that described in Nelson, Napier Electric, and Higashi.

We conclude that the Pennsylvania courts would hold that a "prima facie evidence" clause in an indemnity agreement shifts to the indemnitor the burden of proving that the costs incurred were not recoverable. We further conclude that what an indemnitor must demonstrate to

8

escape liability for attorney's fees depends upon the precise language used in the agreement. In Napier Electric, 571 S.W.2d at 646, and Nelson, 878 P.2d at 317-18, the Kentucky and Nevada courts held that the indemnitor must prove bad faith or fraud on the part of the indemnitee in order to avoid payment. However, this result followed from express language in the indemnity agreements in those cases providing that the indemnitees were bound only by a "good faith" standard. See Napier Electric, 571 S.W.2d at 645; Nelson, 878 P.2d at 316. Here, by contrast, the agreement provides that Ravin would be liable to indemnify CIC only for those payments "made . . . in the reasonable belief that [CIC] was liable for the amount disbursed, or that such payment or compromise was reasonable under all of the circumstances." App. at 30 (emphasis added). Pursuant to the foregoing, the court should have placed on Ravin the burden of proving both that: CIC did not actually believe that it was liable for the attorney's fees disbursed, or that its belief in that respect was unreasonable; and CIC did not actually believe that the payment of such fees (as opposed to the incurrence of the fees) was reasonable under all the circumstances, or that its belief in that respect was unreasonable.2 A showing that CIC did not actually believe it was liable for the fees or that CIC did not actually believe that the payment of such fees was reasonable under all the circumstances would be tantamount to a showing of bad faith or fraud.

The district court here expressly placed the burden on CIC of proving the reasonable necessity of the attorney's fees, and found that CIC had not met that burden. See App. at 286. In refusing to reallocate the burden of proof in accordance with the foregoing, the district court impermissibly ignored the terms of the indemnity agreement.

Ordinarily, we would remand this matter for a determination of attorney's fees based on the proper standard. However, Ravin produced no evidence at trial,

_____

2. We express no opinion as to what standard, if any, the Court would apply absent any language regarding either good faith or reasonableness of the incurrence or payment of the fees.

9

either directly or through cross-examination of CIC's witness, that would satisfy the burden it bore in overcoming CIC's prima facie case of entitlement. Ravin introduced no evidence to show either that CIC's belief that the payments were necessary was unreasonable, or that the payment of the fees was unreasonable under all the circumstances. That being so, Ravin's sole remaining grounds to challenge the attorney's fees claimed by CIC was bad faith, and Ravin produced no evidence, and has not argued on appeal, that CIC acted in bad faith. Indeed, the record is devoid of any indication that CIC acted in bad faith. In such circumstances, a remand for redetermination by the district court is unnecessary. See Fischer v. Philadelphia Elec. Co., 96 F.3d 1533, 1541 (3d Cir. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1247 (1997); Hanover Potato Prods., Inc. v. Shalala, 989 F.2d 123, 131 (3d Cir. 1993). Therefore, we will simply vacate the judgment of the district court and remand with directions to enter judgment in favor of CIC, awarding it expenses and attorney's fees in the amount it requested.

**B.**

Ravin requests that we reverse or modify the judgment of the district court in Ravin's favor, contending that the district court erred in two respects. However, as we noted above, Ravin has conceded that it did not file a notice of cross-appeal pursuant to FED. R. APP. P. 4(a)(3). See Appellee's Br. at 6. Thus, we may not consider Ravin's contentions unless "the disposition as to [the appealing] party is inextricably intertwined with the interests of a non-appealing party so as to make it impossible to grant relief to one party without granting relief to the other." United States v. Tabor Court Realty Corp., 943 F.2d 335, 344 (3d Cir. 1991); see also Repola v. Morbark Indus., Inc., 980 F.2d 938, 940-41 (3d Cir. 1992). Ravin has not provided us with any reason why this exception applies here and we fail to perceive any. Accordingly, we will not consider Ravin's contentions.

**IV.**

The judgment of the district court will be vacated. The matter will be remanded to the district court with

instructions to enter judgment in favor of CIC awarding it attorney's fees in the amount of $87,752.24 and expenses of $1,417.00.

Costs taxed against appellees.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

11